UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS WILLIAMSON | CIVIL ACTION |
| VERSUS | NO. 18-1195 |
| ST. TAMMANY PARISH FIRE PROTECTION DISTRICT NO. 12 | SECTION A(5) |

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss for Failure to State a Claim (Rec. Doc. 4)** filed by Defendant St. Tammany Parish Fire Protection District No. 12 (the "District"). Plaintiff Thomas Williamson ("Williamson") opposes the motion (Rec. Doc. 10) and Defendant has replied. (Rec. Doc. 13). The motion, set for submission on March 21, 2018, is before the Court on the briefs without oral argument. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the Defendant's motion is **DENIED** for the reasons set forth below.

### I.   Procedural Background

Defendant, St. Tammany Parish Fire Protection District No. 12, brings this motion to dismiss the claims brought by Plaintiff Thomas Williamson. On or about January 16, 2018, Williamson initially brought this suit in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana. In his state court Petition, Williamson alleges the District infringed upon his Constitutional right to Freedom of Speech giving rise to a cause of action under 42 U.S.C. § 1983. Williamson further alleges that the District violated Louisiana's Whistleblower Statute, La. R.S. § 23:967(A).

1

The District removed this matter to this Court on February 6, 2018 pursuant to 28 U.S.C. § 1446 due to Williamson's allegations that the District is liable under 42 U.S.C. § 1983. (Rec. Doc. 1). Because Williamson's § 1983 action arises under "the Constitution, laws, or treaties of the United States," this Court has original jurisdiction pursuant to 28 U.S.C. § 1331—federal question jurisdiction. Additionally, this Court has supplemental jurisdiction over Williamson's state court claim pursuant to 28 U.S.C. § 1367—supplemental jurisdiction.

II. **Factual Background**

This matter arises from a string of events that eventually lead to Williamson being put on administrative leave from the St. Tammany Parish Fire District. The following well-pleaded facts are taken from Williamson's Petition for Damages. At this 12(b)(6) motion stage, the Court must view the following facts from Williamson's Petition as true.

Williamson is a public employee of the District working as a Firefighter/Operator. According to his Petition, Williamson, as an employee of the District, came into information that Fire Chief Stephen Krentel ("Krentel") and Chief Michael Haley ("Haley") violated Louisiana Revised Statute § 33:2560 and/or the Fire Department's Policies and SGOs. On or about October 11, 2017, Williamson requested the St. Tammany Parish Civil Service Board ("CSB") conduct an investigation into the unprofessional conduct of Krentel and Haley.[1] Acting upon Williamson's Request for Investigation, the CSB found reasonable cause to believe that Krentel and Haley committed violations as outlined by the Request for Investigation. By resolution, the CSB passed Williamson's Request for Investigation to the Board of Commissioners of Fire District No. 12 for

---

[1] According to his Petition, Williamson's motivation in filing the Request for Investigation stems from Krentel publically admitting to an extra marital affair with a subordinate co-employee. The affair allegedly violated department policy.

further investigative action against Krentel and Haley.[2] In conjunction with the resolution, the CSB issued an Order Regarding Retaliation that prohibited the District from committing any retaliatory acts against Williamson in connection with CSB's investigation.[3] (Rec. Doc. 1-1, p. 7).

On or about January 4, 2018, Williamson received two Notices of Investigation issued by the Board of Commissioners of Fire District No. 12 against Williamson. According to Williamson, the Notices do not name a complainant, are factually vague, and lack specificity as to the conduct of Williamson that allegedly violated policy and gave rise to the investigations. The Notices also placed Williamson on administrative leave with pay pending the outcome of the investigations.[4] The Notices also contain a pre-disciplinary hearing date set for January 25, 2018.[5] Finally, Williamson alleges that due to the timing of the investigations initiated against him and his prior work performance reviews by the District, it can only be concluded that this conduct constitutes reprisal, retaliation, and intimidation. Additionally, Williamson contends that he is statutorily immune from retaliation, reprisal, disciplinary action, and/or threats under Louisiana Revised Statute § 23:967(A), Louisiana's Whistleblower Statute. Moreover, Williamson argues that his accusations against Krentel and Haley constitute protected activities under the First Amendment. According to Williamson, the investigation of his actions and his being placed on administrative leave constitute prohibited acts of retaliation for exercising his First Amendment rights under 42 U.S.C. § 1983.

---

[2] Williamson contends that the CSB validated Williamson's un-rebutted facts by passing the investigation to the Board of Commissioners of Fire District No. 12.
[3] The Order provides, in relevant part: "**IT IS HEREBY ORDERED** that there shall be no retaliation against, or intimidation of, any complainant, target, witness or potential witness connected to the captioned investigation. Any violation of this Order will be met with swift and severe action by the Board." (Rec. Doc. 1-1, p. 7).
[4] Williamson points out that Krentel, also under investigation for wrongdoings, has not been placed on administrative leave. Williamson argues these actions amount to intentional indifference on behalf of the District.
[5] Plaintiff argues that the setting of a date for a pre-disciplinary hearing creates an inference that the Board has already made a decision to discipline Williamson.

## III. Legal Standard

Under well-settled standards governing Rule 12(b)(6) motions to dismiss, a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts that would entitle him to legal relief. *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (citing *Benton v. United States*, 960 F.2d 19 (5th Cir. 1992)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculation level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## IV. Law and Analysis

The District contends that Williamson's First Amendment freedom of speech retaliation claim should be dismissed for failing to demonstrate that he suffered from an adverse employment action. Specifically, the District argues that being subject to an internal investigation and being placed on administrative leave with pay do not qualify as adverse employment actions under Fifth Circuit precedent. Accordingly, the District argues that Williamson has failed to plead a prima facie case for First Amendment retaliation under § 1983 and his claim warrants dismissal at this stage. In his opposition, Williamson concedes that being placed on administrative leave alone does not constitute an adverse employment action cognizable under § 1983. However, Williamson contends that when viewed collectively, all of the actions taken against him give rise to an adverse employment action.

As a general rule, the First Amendment bars not only direct limitations on speech, but also adverse government action against an individual because of his or her exercise of First Amendment freedoms. *Colson v. Grohman*, 174 F.3d 498, 509 (5th Cir. 1999). To succeed on his First Amendment freedom of speech retaliation claim, a plaintiff must show (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public service; and (4) the plaintiff's speech motivated the defendant's actions. *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000). Here, the District argues that Williamson failed to show that he suffered an adverse employment action.

Judge Barbier recently provided a thorough analysis of the Fifth Circuit's precedent concerning what constitutes an adverse employment action in *Dumas v. St. Tammany Parish Fire District No. 3*, No. 17-1025, 2017 WL 1969641, *1 (E.D. La. May 12, 2017). In *Dumas*, plaintiff James Dumas worked as a firefighter at St. Tammany Parish Fire District No. 3. Dumas had

5

Facebook conversations with community leaders concerning his Fire Chief's alleged traits of racism and incompetence. Dumas was thereafter issued a Notice of Investigation alleging that he was "insubordinate, aired grievances outside the chain of command, and engaged in communications that had the potential to bring public reproach to the department." *Id.* at *1. Dumas was ultimately suspended for five shifts without pay. In response, Dumas brought suit against St. Tammany Fire District No. 3, among other defendants, for retaliation under the First Amendment for exercising his First Amendment right to freedom of speech. *Id.* at *2. The Court dismissed Dumas's retaliation claim on defendant's 12(b)(6) motion. The Court reasoned that Dumas's only allegation of having suffered an adverse employment action was being subject to an internal investigation. *Id.* at *5 ("[E]ven accepting Plaintiff's allegations as true, 'internal investigations do not constitute adverse actions' in the context of First Amendment retaliation claims in the Fifth Circuit." *Ortego v. Dep't of Transp.*, No. 13-836, 2014 WL 12521695, at *6 (E.D. La. Feb. 18, 2014) (citations omitted)).

In *Dumas*, the Court found that the "standards articulated in *Breaux v. City of Garland* and *Benningfield v. City of Houston* are the appropriate standards to determine whether a public employee has suffered an adverse employment action in the context of a First Amendment retaliation claim." *Id.* at *4. Under the *Breaux* standard, adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.[6] *Breaux*, 205 F.3d at 157. Transfers can also constitute adverse employment actions if they are sufficiently punitive, or if the new job is markedly less prestigious and less interesting than the old one. *Id.*

---

[6] To be clear, the Fifth Circuit has held that formal reprimands do qualify as adverse employment actions, but verbal reprimands do not. *See Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998), *cert denied*, 526 U.S. 1065 (holding that verbal reprimands are not actionable); *see also Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999) (holding that formal reprimands are actionable).

In *Breaux*, the Fifth Circuit held that police officers did not suffer from adverse employment actions in retaliation for their allegations of public corruption in the police department when the Police Chief ordered Internal Affairs investigations of the officers, required one officer to undergo a psychological exam, placed one officer on paid administrative leave, and publicly reprimanded the officers before reprimand was rescinded. *Id.* at 158. Rather, the police officers retained their jobs with the police department and had not been demoted or transferred to less desirable positions.

The *Breaux* Court mentioned its trend in declining to expand the list of actionable adverse employment actions, "noting that some things are not actionable even though they have the effect of chilling the exercise of free speech." *Id.* at 157 (citing *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998)). The reason for not expanding the list of adverse employment actions is to ensure that § 1983 does not enmesh federal courts in "relatively trivial matters." *Id.* (citing *Dorsett v. Board of Trustees*, 940 F.2d 121, 123 (5th Cir. 1991)). In analyzing its previous precedent, the Fifth Circuit found that the following actions did not constitute adverse employment actions: (1) mere accusations or criticism, (2) investigations, (3) psychological testing, (4) false accusations, and (5) polygraph examinations that do not have adverse results for the plaintiff. *Id.* at 157–58.

Williamson agrees with Judge Barbier's application of *Breaux v. City of Garland* in *Dumas* to delineate the scope of adverse employments actions. (Rec. Doc. 10, p. 4). However, Williamson argues that *Dumas* is distinguishable by asserting that the administrative leave order in *Dumas* was not "colored by the fatal due process or lawfully unauthorized actions and practices engaged here by the [CSB] with respect to Firefighter Williamson." *Id.* Expanding upon this theory, Williamson highlights a series of actions that he contends "collectively and continue to impose adverse

7

employment actions on him." (Rec. Doc. 10, p. 4). First, Williamson contends that his leave status is unjustified and unauthorized under law. Second, Williamson points out that he was noticed and continues to be noticed of a "pre-disciplinary hearing" for alleged violations of law and Fire Department regulations, but has not been informed of the facts giving rise to a potential violation.

Specifically, Williamson points out that on January 4, 2018, he received the "Notices of Investigation" that scheduled a pre-disciplinary hearing. The Notices were issued in light of the CSB's November 3, 2017 order that prohibited "retaliation against, or intimidation of, any complainant, target, witness or potential witness in connection with" Williamson's complaint against Krentel and Haley. *See supra,* p. 3. Thus, it is Williamson's position that the "Notices of Investigation" are in direct violation of the CSB's November 3, 2017 protective order.

Additionally, Williamson notes that his stint of administrative leave is in direct violation of particular CSB rules. (Rec. Doc. 10-1, pp. 1–12). One of the roles of the CSB is to regulate "administrative leave" and issue rules in accordance. Particularly, Rule XII(N) provides:

> N. Administrative Leave with pay:
>
> The appointing authority may grant administrative leave with pay *for periods not to exceed sixty (60) days* when circumstances develop that would warrant the removal of an employee from the department without disadvantage in order for the appointing authority to conduct an investigation concerning the conduct of the employee or as may be otherwise required under department policies and procedures. *This period may not be extended beyond sixty (60) days except with prior approval of the board, when circumstances warrant such extension.* Administrative leave shall be terminated upon the employee being ordered to return to active duty or upon the appointing authority affecting disciplinary action, whichever occurs first. (Emphasis added).

(Rec. Doc. 10-1, p. 11). In conjunction with this provision, Williamson points out his stint on administrative leave began on January 4, 2018, and the sixty day leave period elapsed on March

6, 2018.[7] Williamson describes his current status as being in "virtual legal limbo." While his stint on administrative leave has surpassed the sixty day mark, he is still required to report to work within four hours of being contacted by the Fire Chief or administrative personnel. Because of the uncertainty of his situation, Williamson alleges that his—what appears to be indefinite—time on administrative leave has been converted to an "unauthorized and legally unsustainable form of discipline." (Rec. Doc. 10, p. 3). It is Williamson's position that the collection of these actions rises to the level of an "adverse employment action" as required to maintain his retaliation claim.

Williamson cites *Stephens v. Board of Supervisors of the University of Louisiana System*, in support of his argument that "adverse actions collectively are sufficient to deter a reasonable person from exercising activities protected by Title VII." No. 16-6885, 2017 WL 6610468 (E.D. La. Dec. 27, 2017). In *Burlington Northern & Santa Fe Railway Co. v. White*, a Title VII discrimination case, the Supreme Court adopted the following standard to demonstrate retaliation in the Title VII context: "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" 548 U.S. 53, 67 (2006) (citing *Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006)).

However, the Court is unwilling to apply Title VII standards to claims for First Amendment retaliation violations. The Fifth Circuit "has not yet decided whether the *Burlington* standard for adverse employment actions also applies to First Amendment retaliation cases." *See Gibson v. Kirkpatrick*, 734 F.3d 395, 400 n. 4 (5th Cir. 2013) (*Gibson I*), *vacated and remanded on other grounds, Gibson v. Kirkpatrick*, 734 S. Ct. 2874 (2014) (*Gibson II*); *see also DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009); *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d

---

[7] Williamson notes that the Fire District Board of Commissioners has not sought "prior approval" from the CSB for any extension.

553, 566 (W.D. La. 2014) ("The Fifth Circuit has yet to extend the 'materially adverse' standard of *Burlington Northern* to employment-related retaliation provisions brought for Constitutional violations."); *Jackson v. Tex. S. Univ.*, 997 F. Supp. 2d 613, 629 (S.C. Tex. 2014) (noting that the Fifth Circuit has not decided whether the Title VII standard for adverse employment actions established in *Burlington* applies in First Amendment retaliation claims). Thus, Plaintiff's reliance on Title VII cases—*Stephens*; *Haire v. Board of Supervisors of Louisiana State University Agricultural and Mechanical College*, 719 F.3d 356, 358 (5th Cir. 2013); and *McCoy v. City of Shreveport*, 492 F.3d 551, 559–60 (5th Cir. 2007)—in support of his collective adverse actions theory is mistaken.

However, the Fifth Circuit has recognized situations where a campaign of retaliatory harassment can amount to an adverse employment action. To be actionable, "the campaign of retaliatory harassment [must] rise to such a level as to constitute a constructive adverse employment action." *Breaux*, 205 F.3d at 160 (citing *Colson v. Grohman*, 174 F.3d 498, 514 (5th Cir. 1999)). In *Sharp v. City of Houston*, the Fifth Circuit held that the plaintiff was "*constructively demoted* . . . because the defendant created an 'intolerable situation' causing her to transfer to a less desirable position." *Breaux*, 205 F.3d at 160 (quoting *Sharp v. City of Houston*, 164 F.3d 923, 934 (5th Cir. 1999)). In *Thompson v. City of Starkville*, the Fifth Circuit held, "[a]lthough it may be difficult to delimit exactly what conduct, in the abstract, violates a public employee's first amendment rights, a vengeful vendetta seeking an employee's job because of his speech on a matter of public concern surely falls within the ambit." 901 F.2d 456, 470 (5th Cir. 1990). However, in *Breaux*, the Fifth Circuit was sure to delineate the narrow scope of *Thompson*. In *Thompson*, the "defendants accused the plaintiff police officers of committing a burglary, alleged that he threatened another officer, caused the plaintiff to be disciplined more severely than other

10

officers for the same offense, and ultimately were instrumental in having [the plaintiff] fired." *Breaux*, 205 F.3d at 160 (citing *Thompson*, 901 F.2d at 469).

*Colson v. Grohman* also addressed the notion that a string of adverse actions may rise to the level of an actionable adverse employment action. 174 F.3d 498, 514 (5th Cir. 1999) (stating, "[o]ur own cases on this subject have taken place in the employment context, where we have required that the campaign of retaliatory harassment rise to such a level as to constitute a constructive adverse employment action."). In *Colson*, "the defendants' allegedly retaliatory crusade amounted to no more than the sort of steady stream of false accusations and vehement criticism that any politician must expect to endure." *Id.*

This theory arises more often in situations where an employee's "voluntary" transfer is in fact a constructive demotion. *Id.* For example, in *Sharp*, the Fifth Circuit upheld a jury's finding that the plaintiff's transfer, although at her own request, was a constructive demotion. *Id.* Although the transfer looked "voluntary" on the surface, it was found that the transfer was the "involuntary result of conditions so intolerable that a reasonable person would feel compelled to leave, and that the transfer constituted a non-trivial adverse employment action." *Id.* In *Benningfield,* the plaintiff alleged having suffered from a "campaign of harassment and retaliation," but the Fifth Circuit was unwilling to consider the plaintiff "constructively discharged" after she failed to show that a reasonable person in her shoes would have felt compelled to resign. *Benningfield*, 157 F.3d at 374, 376–78.

Williamson has not suffered from a constructive discharge or demotion. Rather, Williamson argues that the retaliatory acts taken against him essentially prohibit him from working and interacting with co-workers. (Rec. Doc. 10, p. 6). Although certainly adverse to Williamson, these adverse actions do not currently rise to the level of actionable under applicable Fifth Circuit

11

standards. However, the Court finds merit in Williamson's contention that the campaign of adverse actions against him is still ongoing. The Court also agrees with Williamson's contention that the notice of a pre-disciplinary hearing creates an inference that he may be disciplined at a future date. If Williamson is in fact suffering from a campaign of adverse employment actions, then such a campaign is still in its early stages. The Court will allow Williamson to supplement and amend his Complaint to allege the acts being taken against him more thoroughly and include acts that may have taken place since first bringing his claim.

To be precise, the Court's principal concern is what appears to be the District's violation of the CSB's Rule XII(N). According to the Court's review of the applicable case law, being placed on administrative leave is not alone an actionable adverse employment action. However, according to Plaintiff's opposition memorandum, the District has essentially placed Williamson on indefinite administrative leave and has failed to provide him with a hearing within the required 60-day window. For these reasons, the Court will grant Williamson leave to supplement and amend his Complaint. The Court is concerned with the current status of Williamson's administrative leave and of any other potentially adverse actions taken against him from the date of his initial complaint.

The instant motion also seeks to dismiss Williamson's whistleblower claim under La. R.S. § 23:967. The Louisiana Whistleblower Statute, La. R.S. § 23:967, protects employees against "reprisal" for disclosing an employer's illegal activity.

La. R.S. § 23:967 provides, in relevant part:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law:
    (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
    (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

12

> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
>
> . . .
>
> C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
>
> (1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

La. R.S. § 23:967(A).

The parties disagree as to whether Williamson has properly alleged having suffered a reprisal at the hands of the District. The District contends that under the applicable precedent, "reprisal" encompasses "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Kirmer v. Goodyear Tire & Rubber Co.*, 538 F.App'x 520 (5th Cir. 2013). The District points out that Williamson's allegation of being placed on administrative leave does not fall within the gambit of "reprisal" actions contemplated by the Fifth Circuit. In response, Williamson notes that the Fifth Circuit in *Kimer* relied on the Louisiana Fifth Circuit's decision *Tatum v. United Parcel Services*, 20-1053 (La. App. 5 Cir. Nov. 11/15/11); 79 So.3d 1094, 1104. However, *Tatum* also held that a reduction of opportunities in the employment context constitutes "reprisal" as contemplated in La. R.S. § 23:967(A). *Id.* at 1106. Williamson further argues that his opportunity to work, communicate with co-workers, communicate with the public, and his opportunity to testify in response to his administrative leave status all constitute a reduction in employment opportunities. (Rec. Doc. 10, p. 6).

In *Tatum*, the court was looking to applicable federal jurisprudence when it stated that a reduction of opportunities can constitute actionable employment actions. *Tatum*, 79 So.3d at 1104

(stating, "Discharges and demotions as a result of adverse employment actions prohibited by the above statute are not the only action the federal courts consider in retaliation cases. Also included in this category are employment actions that include a reduction of opportunities." (citing *Edwards v. Bd. of Regents of the Univ. of Ga.*, 2 F.3d 382 (11th Cir. 1993)))). There the court relied on *Edwards*, a U.S. Eleventh Circuit case, for the notion that a reduction in opportunities can constitute an adverse employment action—or in this case, reprisal. *Edwards* dealt with a particular scenario where a college professor was denied teaching opportunities after filing complaints with his university regarding older teachers in class assignments.

This Court is unwilling to expand *Edwards* to the case at hand. Rather, the Court does not find a significant difference in the scope of actions considered "reprisals" under La. R.S. § 23:967 and "adverse employment actions" under Fifth Circuit precedent. Therefore, the Court's above analysis of Williamson's "adverse employment actions" analysis is consistent with an analysis concerning "reprisal" under La. R.S. § 23:967. Therefore, the Court will grant leave to Williamson to supplement and amend his Complaint to add additional actions taken by the District that may constitute "reprisal" actions or "adverse employment actions" under the standards outlined above.

Accordingly;

IT IS ORDERED that Defendant's **Motion to Dismiss for Failure to State a Claim (Rec. Doc. 4)** is **DENIED**;

IT IS FURTHER ORDERED that Plaintiff must supplement and amend his Complaint within **fourteen (14) days** of the issuance of this Order, as described herein.

May 7, 2018

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE